## Perry v. Niedringhaus et ux. (No. 2)

*Cassin Craig*, for plaintiff.

*Aaron S. Swartz*, for defendants.

KNIGHT, P. J., January 25, 1954.—This case is before the court en banc on plaintiff's motion to take off

the compulsory nonsuit entered by the trial judge at the close of plaintiff's case.

Plaintiff, a domestic servant, was injured when, while cleaning windows for her employers, defendants herein, she fell through an iron grate on which she was standing into the cellar window areaway of some three or four feet in depth. Plaintiff testified that the accident came about without warning, that she suffered injuries, about which she gave considerable testimony, and that she knew nothing about the cause of the accident. Plaintiff further testified that after her accident she spoke to defendant wife over the telephone and defendant mentioned that one of her daughters had had a similar accident at some time prior to plaintiff's accident. Defendant wife admitted that the house was 21 years old at the time of the accident and that no inspection had ever been made of the grates. Defendant further testified that after the accident the grate had been repaired. This was the extent of plaintiff's case.

The issue which arises here is whether plaintiff's case presented sufficient facts that the trial judge erred in refusing to allow it to go to the jury.

Some considerable time both at the time of the trial and before the court en banc was consumed in arguing the question of the duty owed by defendants herein to plaintiff. The A. L. I. Restatement of Law of Torts plainly considers domestic employes in the category of business invitees to whom owners of land owe the duties of inspection for the discovery of conditions which will make the premises unsafe and of warning such invitees of any dangerous condition thus found (see A. L. I. Restatement of the Law of Torts, §§332(g), 343). There have been no Pennsylvania decisions precisely on this point. Under such circumstances the courts of Pennsylvania have generally followed the restatement

and we shall assume for the purposes of this case that such should be the law.

We thus start off with defendants owing plaintiff a duty demanding the exercise of a high degree of care. But, even assuming this duty, plaintiff must show more in order to recover. As pointed out by the court in Kmiotek v. Anast et al., 355 Pa. 349 (1946):

"The general rule . . . is that the owner or occupant of premises who induces others to come onto it by invitation . . . owes to them the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition, so that they will not be unnecessarily or unreasonably exposed to danger. But the owner cannot be held liable unless there is proof that the invitee was injured through his negligence."

The determination of defendants' negligence, if any, is logically the focal point on which the disposition of this case depends. On this question, the court in Thompson v. Gorman, 366 Pa. 242, 246 (1951), held that:

"The mere happening of an accident is no evidence of negligence and is not sufficient to take a case to the jury . . .

"Plaintiff has the two-fold burden of proving that the defendant was negligent and that his negligence was the proximate cause of her accident."

And in Wright et al. v. Straessley, 321 Pa. 1, 4 (19):

". . . the burden of proving negligence is on him or her who asserts it, and . . . a defendant is not called upon to come forward with countervailing evidence until the plaintiff has established negligence by direct or circumstantial proof."

How little plaintiff has met her burden of proof is immediately apparent. Beyond the happening of the accident and the brief and unexplained referrals to a previous accident and to the fact that the grate was repaired after the accident, we have nothing. It is not

enough that we say that defendants were under a duty to inspect the premises. Assuming that a failure to inspect was negligence as to plaintiff, as pointed out in the Thompson case, supra, plaintiff must further prove that this failure to inspect was the proximate cause of her injuries. Plaintiff had the burden of proving the existence of a dangerous condition which inspection would or should have revealed. However, no testimony was introduced as to the condition of the grate either prior to or subsequent to the accident. No explanation was given of the cause of this accident. The jury in such a situation could only guess as to the cause of the accident and this we cannot permit.

In his brief, counsel for plaintiff asserts that there can be no question that a dangerous condition existed, otherwise the grate would not have broken and given way. Unquestionably that is true, but the important point is whether that condition was such that it could have been seen by reasonable inspection. This court is aware of the fact that metals may break, if we assume that this grate did break, although to the naked eye they appear in perfect condition.

Two of the cases on which plaintiff places considerable reliance may be readily distinquished from the instant case on the factors just mentioned. In Porter v. Wilson, 62 Pa. Superior Ct. 339 (1916), where plaintiff was hurt as the result of a rope which was supporting him in his work parting, there was testimony that the rope was visibly frayed and that this had been noted before the accident and a new rope requested. In O'Donnell v. The Bell Telephone Company of Pennsylvania, 250 Pa. 440 (1915), where plaintiff lineman was injured when a pole on which he was working fell to the ground, there was testimony presented as to the fact that the pole was visibly decayed. In several other cases cited by the attorney for plaintiff in his brief he

himself notes that the causes of the accidents were defective equipment and that testimony was presented as to the defects at the trial of those cases. We do not have that element present in this case.

In view of these facts the court must rule that the trial judge was correct in holding that plaintiff's case did not offer sufficient proof to enable it to be submitted to a jury.

And now, January 25, 1954, the motion to take off the nonsuit is dismissed.